IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

**No. 24-1239**

_____

**JOHN ALEXANDER,**

**Appellant**

v.

**B. MYERS, ET AL.**

_____

**BRIEF FOR DEPARTMENT OF CORRECTIONS APPELLEES**

_____

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
ENTERED JANUARY 16, 2025

DAVID W. SUNDAY, JR.
*Attorney General*

BY:  MICHAEL J. SCARINCI
*Senior Deputy Attorney General*

Office of Attorney General
15th Floor, Strawberry Square          DANIEL B. MULLEN
Harrisburg, PA 17120                   *Chief Deputy Attorney General*
Phone: (717) 857-2184                  *Chief, Appellate Litigation Section*
FAX:   (717) 772-4526

DATE: August 18, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF JURISDICTION .................................................... 1

STATEMENT OF ISSUE.................................................................... 2

STATEMENT OF THE CASE ............................................................ 3

STATEMENT OF RELATED CASES ...............................................10

SUMMARY OF ARGUMENT .........................................................11

ARGUMENT....................................................................................13

I.     Given How Easily a First Amendment Retaliation Claim May Be
Stated, and the Liberal Standard of Review on a Rule 12(b)(6)
Motion, DOC Officials Must Acknowledge that Alexander Has Stated
a Viable Claim for Retaliation. .................................................13

CONCLUSION .................................................................................19

CERTIFICATE OF COUNSEL.........................................................20

CERTIFICATE OF SERVICE...........................................................21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allah v. Al-Hafeez*,
226 F.3d 247 (3d Cir. 2000) ............................................................18

*Allah v. Seiverling*,
229 F.3d 220 (3d Cir. 2000) ......................................................13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................13

*Bistrian v. Levi*,
912 F.3d 79 (3d Cir. 2018) ...........................................................4, 13

*Boyd v. Pa. Parole Bd.*,
263 A.3d 67 (table) (Pa. Cmwlth. 2021) .........................................18

*Brennan v. Norton*,|
350 F.3d 399 (3d Cir. 2003) ............................................................14

*Carino v. Stefan*,
376 F.3d 156 (3d Cir. 2003) ............................................................13

*Commonwealth v. Alexander*,
331 A.3d 606 (Pa. Super. 2024) ....................................................... 3

*Commonwealth v. Goodman*,
331 A.3d 651 (Pa. Super. 2025) ......................................................18

*Estate of Smith v. Marasco*,
318 F.3d 497 (3d Cir. 2003) ............................................................15

*Farrell v. Planters Lifesavers Co.*,
206 F.3d 271 (3d Cir. 2000) ............................................................16

*Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*,
57 F.3d 1215 (3d Cir. 1995) ............................................................15

*Howard v. Little*,
    2020 WL 3971934 (D. Del. 2020) ...................................................................15

*Mack v. Yost*,
    968 F.3d 311 (3d Cir. 2020) ..................................................................4, 13, 18

*Marra v. Phila. Hous. Auth.*,
    497 F.3d 286 (3d Cir. 2007) ........................................................................16, 17

*McKee v. Hart*,
    436 F.3d 165 (3d Cir. 2006) ...........................................................................14

*Mitchell v. Horn*,
    318 F.3d 523 (3d Cir. 2003) ...........................................................................14

*Rivera v. Monko*,
    37 F.4th 909 (3d Cir. 2022) ............................................................................13

*Sears v. McCoy*,
    815 Fed.Appx. 669 (3d Cir. 2020) ..................................................................14

*U.S. v. Curran*,
    2025 WL 1577564 (3d Cir. 2025) ...................................................................18

*Watson v. Rozum*,
    834 F.3d 417 (3d Cir. 2016) .........................................................14, 15, 16, 17

*Williamson v. Bolton*,
    2025 WL 1232624 (3d Cir. 2025) .............................................................16, 18

*Wisniewski v. Fisher*,
    857 F.3d 152 (3d Cir. 2017) ...........................................................................17

**Statutes**

28 U.S.C. § 1291 ..................................................................................................... 1

28 U.S.C. § 1331 ..................................................................................................... 1

28 U.S.C. § 1343 ..................................................................................................... 1

42 U.S.C. § 1983 ..................................................................................................... 1

**Rules**

Fed.R.Civ.P. 12(b)(6)......................................................................3, 4, 11

## STATEMENT OF JURISDICTION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983, over which the district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

This appeal is from a final order, over which this Court has jurisdiction by virtue of 28 U.S.C. § 1291. The district court's order was entered on January 16, 2025, and the notice of appeal was filed on February 7, 2025.

## STATEMENT OF ISSUE

Did the inmate state a claim for retaliation under the First Amendment to the United States Constitution?

## STATEMENT OF THE CASE

Appellant John Alexander (Plaintiff below) is a Pennsylvania State prisoner serving a life sentence of imprisonment, without the possibility for parole, for murder. *See Commonwealth v. Alexander*, 331 A.3d 606, \*2 (Pa. Super. 2024). During the operative events, Alexander was incarcerated at State Correctional Institution (SCI) Somerset. He commenced this civil rights action *pro se*, alleging violations of the First, Fourth, Eighth, and Fourteenth Amendments and state law. He named as Defendants (now Appellees) several Pennsylvania Department of Corrections Officials (hereinafter, collectively "DOC Officials").[1] DOC Officials moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). The district court dismissed the amended complaint without leave to amend as further leave would be futile.

Now, on appeal, Alexander, represented by pro bono counsel, implicitly acknowledges that all of his claims are not viable except for his First Amendment retaliation claim. Many of the events Alexander alleges with respect to that claim did not occur or, if they did occur, DOC Officials were motivated by a legitimate penological reason—keeping drugs out of the prison. However, consideration of

---

[1] The named defendants were as follows: Lieutenants B. Myers, E. Speck, and D. Wiser; Hearing Examiner S. Ellenberger; Accounts Specialist K. Kifer; Correctional Officers J. Taylor and C. Greenleaf.

those defenses is not appropriate at this posture. Therefore, because, on a Rule 12(b)(6) motion, the allegations must be accepted as true, and because a First Amendment retaliation claim is "easy to allege" and "cannot be readily dismissed on the pleadings," DOC Officials must concede that Alexander has stated a claim for retaliation. *See Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020) *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018).

The Pleadings

Alexander commenced this action in August 2022. JA85-113. DOC Officials moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Doc. 10; JA116-144. Specific to the retaliation claim, DOC Officials argued that it was barred by Pennsylvania's two-year statute of limitations. JA129-30. If the retaliation claim was timely, DOC Officials anticipated that this claim "would proceed to discovery." JA130.

In response to the motion to dismiss, Alexander filed an amended complaint. JA40-79. The district court granted Alexander leave to file the amended complaint and dismissed DOC Officials' motion to dismiss as moot. Doc.20.

As this matter did not proceed past the pleadings, the only "facts" before the Court are contained in the amended complaint. According to the amended complaint, on June 20, 2019, the DOC transferred Alexander to SCI-Smithfield. JA51, ¶10. Shortly thereafter, Lieutenant Myers noted that Alexander had history of filing

4

grievance and lawsuits, and told Alexander that such conduct would not be tolerated at SCI-Smithfield. JA52, ¶12.

On June 25, 2019, Alexander submitted to unit corrections officers a mailing containing an *in forma pauperis* application in *Alexander v. Cumberland County*, *et al.*, 3:19-cv-974 (M.D. Pa.). JA53, ¶18. That IFP packet was received by the district court; however, because that court had sent Alexander the incorrect IFP form, the court directed him to refile on the correct form. Alexander Brief at 6.

Alexander prepared a second IFP packet on July 11, 2019, and a third packet on October 2, 2019. JA54-55, ¶¶21-38. Yet, according to Alexander, the prison never mailed these IFP packets to the district court. Instead, Myers, Speck, Kifer, and/or Greenleaf retained these second and third packets in the security office. JA54-56, ¶¶25, 31-32. Lieutenants Myers and Speck allegedly required that Alexander's mail be subject to increased security in 2019 and 2020. JA56, ¶¶34-38. In late 2020 and again in early 2021, CO Greanleaf supposedly told Alexander that he and others in the Security Office had interfered with Alexander's IFP mailings in order to disrupt his lawsuits. JA56-57, ¶¶37-40.

For filing grievances while at SCI-Smithfield, DOC Officials also allegedly retaliated against Alexander. JA59, ¶¶50-51. Lieutenant Speck, while speaking with Alexander about a grievance he had filed, told him that if he continued to file lawsuits and grievances, there would be "negative consequences." JA60, ¶51.

Another inmate supposedly discouraged Alexander from filing any additional grievances, telling him that prison officials in the Security Office were sabotaging Alexander's IFP applications and would penalize him further if he continued filing grievances. JA60, ¶52.

In January 2020, while Alexander was in the Restricted Housing Unit ("RHU"), an inmate assaulted a correctional officer. JA60, ¶53. Prison officials supposedly beat that inmate and placed him in the RHU. *Id.* Alexander and other RHU inmates demanded medical treatment for the injured inmate. *Id.* This allegedly irritated officers in the RHU. *Id.* As a result, over several different dates in February 2020, these officers, at the direction of Wiser, Myers, and Speck, sprayed "liberal" amounts of pepper spray on the inmates in the RHU, including Alexander. JA60-61, ¶¶54-56.

Alexander filed grievances about these use-of-force incidents. JA61, ¶¶58-59. Lieutenant Wiser interviewed Alexander about those grievances. JA61, ¶59. According to Alexander, Wiser said these grievances were "totally frivolous" and berated Alexander for filing them. JA61, ¶59. Wiser told Alexander that "it would go better for him . . . if he did not persist in pursuing the grievances." JA61-62, ¶59. Undeterred, Alexander continued to file grievances. JA63, ¶¶65-66.

On June 24 2020, Lieutenant Myers charged Alexander with misconduct, alleging that he was conspiring with relatives outside the prison to smuggle drugs

through the prison mail. JA63, ¶68. That same day, Lieutenant Wiser and COs Greenleaf and Taylor searched Alexander's cell and seized his papers, including legal documents. JA64, ¶¶69-70, 72-73. According to Alexander, this search was in retaliation for filing grievances and lawsuits, and not because he was suspected of drug smuggling. JA64, ¶71. Alexander filed a grievance complaining about the search of his cell. JA65, ¶74.

On July 2, 2020, a hearing examiner allegedly dismissed the misconduct charge against Alexander. JA65, ¶77. That same day Lieutenant Myers issued a new misconduct against Alexander, accusing him of smuggling drugs into the prison through the mail (which was why DOC Officials searched Alexander's cell). JA66, ¶79, JA70, ¶¶94-96. According to Alexander, a different hearing examiner, Ellenberger, was assigned to hear this misconduct as a "favor to a friend." JA67, ¶84. At the hearing, Ellenberger told Alexander that he would credit Lieutenant Myers' allegations over Alexander's denial. *Id.* Ellenberger did not permit Alexander to present any evidence or call any witnesses. *Id.* Instead, Ellenberger urged Alexander to plead guilty. *Id.* When Alexander refused, Ellenberger supposedly stated that he did not need to view the evidence, and would summarily find Alexander guilty based on Lieutenant Myers' allegations. JA67-68, ¶¶85-87. At the end of that hearing, Ellenberger told another inmate that he had been specifically

7

assigned to hear the charge against Alexander to ensure that he "gets punished." JA68, ¶89.

In July 2020, Alexander filed a grievance regarding the misconduct hearing and a request to staff inquiring about a Security Office restriction on his daughter's phone number. JA69, ¶¶92-93. A few days later, Myers, Speck, and Wiser approved restrictions on telephone communications between Alexander and his son and daughter. JA70, ¶94.

Based on the results of the misconduct hearing, Lieutenant Myers and Speck, "sometime in 2020," recommended that Alexander be transferred to the Drug Elimination Management Operation Unit ("DEMO") on belief that he "is a high-level participant in facility drug trafficking activities." JA 72, ¶109. According to Alexander, the DEMO unit is a segregated housing unit with limited privileges. JA72, ¶111. The prison later transferred Alexander to the DEMO Unit. JA72-73, ¶113.

In the wherefore clause, Alexander requested a host of relief, including compensatory and punitive damages. JA79.

Following the filing of the amended complaint, DOC Officials moved to dismiss it. Doc. 21, Doc. 25.

The Order Appealed From

In a 39-page opinion, the district court granted DOC Officials' motion and dismissed the amended complaint without leave to amend. JA4-5, JA6-44. As previously noted, Alexander has implicitly conceded that, other than his First Amendment retaliation claim, all of his other claims are not viable. As to the retaliation claim, the court concluded that DOC Officials' interference with Alexander's mail and search of his cell was not sufficiently adverse to deter a person of ordinary firmness from filing grievances or lawsuits. JA26. As for Alexander's placement in the RHU in January 2020, exposure to pepper spray in February 2020, denial of phone privileges in July 2020, referral for placement in the DEMO program in 2020, and the misconducts issued against him that same year, the court found that causation was lacking. *Id.* These alleged adverse actions occurred up to a year and a half after Alexander engaged in constitutionally protected conduct. *Id.*

The court also determined that, pursuant to the Prison Litigation Reform Act, Alexander could not recover compensatory damages because he did not allege any physical injury, let alone a *de minimis* physical injury, as required to recover damages for an emotional injury. JA42.

As for amendment, the district court concluded that because Alexander's retaliation claim was flawed, and he already had the opportunity to amend, granting him leave to amend would be futile and inequitable. JA44.

9

Alexander then took this appeal. JA1.

## STATEMENT OF RELATED CASES

This case has not previously been before the Court. There are no pending or completed cases to which it is related.

## SUMMARY OF ARGUMENT

As this Court has stated, a First Amendment retaliation claim is "easy to allege" and "cannot be readily dismissed on the pleadings," because on a Rule 12(b)(6) motion, the allegations of fact must be accepted as true. Given these standards, DOC Officials must acknowledge that, at this posture, Alexander has stated a First Amendment retaliation claim.

Filing a lawsuit and/or grievances are constitutionally protected conduct. Alexander alleges that, thereafter, DOC Officials engaged in a series of adverse actions—interfered with his legal mail, exposed him to pepper spray, searched his cell, filed a false misconduct against him, conducted a "sham" misconduct hearing, prevented him from calling his children, and transferred him to the DEMO Unit. Admittedly, the district court erred in viewing these actions in isolation. The cumulative impact of these actions, as alleged, is more than *de minimis*. Alexander also sufficiently alleged that these adverse actions were in retaliation for his protected conduct. Although not credible, because this is a Rule 12(b)(6) motion, at this point it must be believed that DOC Officials, such as Hearing Examiner Ellenberger, admitted they were retaliating against Alexander.

Many of these events did not occur or, if they did, DOC Officials had a legitimate penological reason for their actions. Indeed, Alexander acknowledges in his amended complaint that DOC Officials suspected him of smuggling drugs into

11

the prison through the mail. However, as this Court recently reiterated, this "same decision defense" must typically await summary judgment. At that point, DOC Officials will show that Alexander's First Amendment retaliation claim, like every other claim already dismissed from this suit, is totally meritless.

# ARGUMENT

*Standard of Review*: This Court exercises plenary review of a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022); *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2003). Applying the same standard as the district court, this Court accepts as true all factual allegations, construes the complaint in the light most favorable to the plaintiff, and determines whether the complaint states a plausible claim for relief on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Rivera*, 47 F.4th at 914.

## I. Given How Easily a First Amendment Retaliation Claim May Be Stated, and the Liberal Standard of Review on a Rule 12(b)(6) Motion, DOC Officials Must Acknowledge that Alexander Has Stated a Viable Claim for Retaliation.

First Amendment retaliation claims are "easy to allege and difficult to prove," which means they are "easily fabricated" and "cannot be readily dismissed on the pleadings." *Mack*, 968 F.3d at 324; *Bistrian*, 912 F.3d at 96. Therefore, this Court approaches such claims "with skepticism and particular care." *Bistrian*, 912 F.3d at 96.

Prison officials are liable for retaliatory conduct if the conduct was substantially motivated by a desire to punish the inmate for exercising a constitutional right. *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). Thus, to prove a First Amendment retaliation claim, a prisoner must establish the following three elements: *first*, "his conduct was constitutionally protected;" *second*, "he

13

suffered an adverse action at the hands of prison officials"; and *third*, "his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

On the first element, DOC Officials do not dispute that filing grievances and lawsuits is constitutionally-protected conduct. *See id.* at 422-23; *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Allah*, 229 F.3d at 222, 225.

Regarding the second element, an adverse action "'need not be great in order to be actionable; rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423, quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Stated differently, an adverse action  must be sufficient "to deter a person of ordinary firmness" from exercising his constitutional rights. *Allah*, 229 F.3d at 225 (cleaned up).

DOC Officials must acknowledge that the district court erred in considering the alleged adverse actions in isolation, rather than the "'cumulative impact'" of those actions. *See Sears v. McCoy*, 815 Fed.Appx. 669, 671 n.5 (3d Cir. 2020), quoting *Brennan v. Norton*, 350 F.3d 399, 422 n.17 (3d Cir. 2003). Alexander alleged that beginning at the time of his transfer to SCI-Smithfield, in June 2019 and through 2020, DOC Officials engaged in a series of retaliatory acts—interfered with his legal mail, exposed him to pepper spray, searched his cell, filed a false misconduct against him, conducted a "sham" misconduct hearing, prevented him from calling his children, and transferred him to the DEMO Unit. Regardless of

14

whether or not any one of these actions, in isolation, may have been *de minimis*, considered cumulatively, DOC Officials must concede such actions would "deter a person of ordinary firmness" from exercising his constitutional rights.

Since these acts must be considered cumulatively, it is unnecessary to address Alexander's arguments about whether interference with mail or a cell search, alone, would be sufficiently adverse to state a retaliation claim. Brief at 20-28. In other words, these arguments are academic. *See e.g. Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1229 (3d Cir. 1995).

Turing to the third element—causation—the inmate must show a causal connection between the protected activity and the adverse action. *See e.g. Watson*, 834 F.3d at 424. Proof of causation may be through direct or circumstantial evidence. *See id.* at 422; *Howard v. Little*, 2020 WL 3971934, *5 n.3 (D. Del. 2020). Where the evidence is circumstantial in nature, the evidence may consist of either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson*, 834 F.3d at 422. "'The timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.'" *Id.* at 424, quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003). "[W]here the temporal proximity is not so close as to be 'unduly suggestive' the appropriate test is 'timing plus other evidence.'" *Id.*, quoting *Farrell*

15

*v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). "[C]ausation, like any other fact, can be established from the evidence gleaned from the record as a whole." *Watson*, 834 F.3d at 424.

DOC Officials must again acknowledge that the district court's analysis on causation was flawed. The district court focused on one method of causation—unduly suggestive temporal proximity—to the exclusion of other methods. JA26. Although allegations of statements by certain DOC Officials admitting to retaliating against Alexander are not credible, *see e.g.*, JA67-68, ¶¶84 (accusing Ellenberger of using racial slurs, and stating he was assigned to make sure Alexander got "punished"), JA56-57, ¶¶37-40 (alleging that CO Greenleaf admitted to Alexander that the prison interfered with his IFP mailings), because this is a Rule 12(b)(6) motion, those allegations must be accepted as true. *See Williamson v. Bolton*, 2025 WL 1232624, *2 n.3 (3d Cir. 2025) (holding that although inmate was adjudicated guilty for lying about sexual harassment, his allegation that he did not lie had to be accepted as true on a Rule 12(b)(6) motion).

These allegations directly attributing a retaliatory motive to DOC Officials, when considered with the allegations circumstantially attributing such a motive to them, are sufficient to satisfy the element of causation. *See Watson*, 834 F.3d at 424 (allegations of causation must be considered as a whole); *see also Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 303 (3d Cir. 2007) (antagonistic conduct must be

considered as a whole). Following Alexander's filing of a lawsuit and grievances, DOC Officials supposedly interfered with his IFP mailings, exposed him to pepper spray, searched his cell, filed a false misconduct against him, conducted a "sham" misconduct hearing, prevented him from calling his children, and transferred him to the DEMO Unit. *See Wisniewski v. Fisher*, 857 F.3d 152, 155, 157 n.4 (3d Cir. 2017) (inmate alleged a "series of additional actions in retaliation for helping his assigned inmate prepare a grievance," which suggested "a pattern of retaliation"). Further, given the allegations that the retaliation was ongoing, the passage of time is insufficient to negate causation. *See Marra*, 497 F.3d 286, 303-05 (3d Cir. 2007) (concluding that evidence of a pattern of antagonist behavior was sufficient to support a causal link).

Even if an inmate establishes a prima facie case of retaliation, prison officials may still prevail if they establish that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Watson*, 834 F.3d at 422. This is "the same decision defense." *Id.* At several points in Alexander's amended complaint, he alludes to the fact that DOC Officials suspected him of smuggling drugs through the mail. *See e.g.* JA63, ¶68. This is why, for example, DOC Officials, searched his cell, intercepted his mail, charged him with misconduct, refused to let him contact his children, and transferred him to the DEMO Unit. Prisoners have routinely attempted to smuggle drugs into

prison through the mail, including legal mail. *See U.S. v. Curran*, 2025 WL 1577564, *1 (3d Cir. 2025); *Commonwealth v. Goodman*, 331 A.3d 651, *1 (Pa. Super. 2025); *Boyd v. Pa. Parole Bd.*, 263 A.3d 67, *2 (table) (Pa. Cmwlth. 2021). However, because this defense is generally "fact specific" and cannot be resolved from "the face of the complaint," and the order on review concerns a Rule 12(b)(6) motion, DOC Officials must await summary judgment to present this defense. *See Williamson*, 2025 WL 1232624, *2.

Finally, DOC Officials acknowledge that Alexander has sufficiently alleged damages, for compensatory damages based on the alleged physical injury he suffered from the use of pepper spray, JA61, ¶¶65-66, and for nominal and punitive damages, which he may pursue under the Prison Litigation Reform Act. *See Mack*, 968 F.3d at 324; *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000).

# CONCLUSION

For these reasons, the Court should reverse the judgment of the district court

on Alexander's First Amendment retaliation claim.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:     */s/ Michael J. Scarinci*

MICHAEL J. SCARINCI
Senior Deputy Attorney General
Bar No. 323816 (Pa.)

DANIEL B. MULLEN
Chief Deputy Attorney General
Chief, Appellate Litigation Section

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 857-2184
FAX:   (717) 772-4526

DATE: August 18, 2025

## CERTIFICATE OF COUNSEL

I, Michael J. Scarinci, Senior Deputy Attorney General, hereby certify as follows:

1. That I am a member of the bar of this Court.

2. That the text of the electronic version of this brief is identical to the text of the paper copies.

3. That a virus detection program was run on the file and no virus was detected.

4. That this brief contains 3,314 words within the meaning of Fed. R. App. Proc. 32(a)(7)(B). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

*/s/ Michael J. Scarinci*

MICHAEL J. SCARINCI
Senior Deputy Attorney General

# CERTIFICATE OF SERVICE

I, Michael J. Scarinci, Senior Deputy Attorney General, do hereby certify that I have this day served the foregoing Brief For Department Of Corrections Appellees, via electronic service, on all CM/ECF users.

Seven copies were also sent by first class mail to the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

*/s/ Michael J. Scarinci*
_____

MICHAEL J. SCARINCI
Senior Deputy Attorney General

DATE: August 18, 2025