**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-1239

———————

JOHN ALEXANDER,
Appellant

v.

B. MYERS, Corrections Lieutenant - SCI-Smithfield; E SPECK, Corrections
Lieutenant - SCI Smithfield; D WISER, Corrections Lieutenant- SCI-Smithfield;
S. ELLENBERGER, Hearing Examiner- SCI-Smithfield;
K. KIFER, Inmate Accounts Supervisor/Specialist SCI-Smithfield;
J. TAYLOR, Corrections Officer SCI-Smithfield;
C. GREENLEAF, Corrections Officer SCI-Smithfield

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 3:22-cv-01195)
District Judge: Honorable Robert D. Mariani

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 10, 2026

———————

Before:  CHAGARES, <u>Chief Judge</u>, SCIRICA* and RENDELL, <u>Circuit Judges</u>

(Filed: August 3, 2026)

———

* The Honorable Anthony J. Scirica was unavailable to participate in the decision in this
case after submission to the merits panel.  This opinion is filed by a quorum of the panel
pursuant to 28 U.S.C. § 46(d) and 3d Cir. I.O.P. 12.1(b).

_____

## OPINION[†]

_____

PER CURIAM

State inmate John Alexander filed a pro se lawsuit against several correctional officers and prison officials, contending they unlawfully retaliated against his exercise of First Amendment rights.  The District Court dismissed his case for failure to state a claim.  The court also found that Alexander did not allege he suffered any physical harm, triggering the Prison Litigation Reform Act's ("PLRA") bar on compensatory damages.  Now represented by pro bono counsel, Alexander challenges both rulings.  The defendants concede that Alexander has stated a retaliation claim and pleaded that he suffered a physical injury.  We agree with the parties.  For the following reasons, we will reverse the District Court's order and remand the case for further proceedings.

## I.[1]

In June 2017, Alexander was assaulted by a correctional officer while confined at SCI Camp Hill in Cumberland County, Pennsylvania.  He filed a federal civil rights complaint in response (the "Cumberland action").

Alexander was transferred to SCI-Smithfield after filing the Cumberland Action.  The day after Alexander arrived, appellee Myers, a corrections lieutenant, approached

_____

[†] This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

[1] The following facts are set forth in Alexander's amended complaint.  For the purposes of this motion, we accept them as true and consider them in the light most favorable to Alexander.  See Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022).

Alexander, noted his "extensive grievance and litigation history," and told him "such activities would not be tolerated at SCI-Smithfield." Joint Appendix ("J.A.") 52.

Following this interaction, Alexander contends correctional officers conspired to hinder his litigation of the Cumberland action. Alexander submitted in forma pauperis paperwork for the Cumberland action to SCI-Smithfield staff in accordance with prison policy. Alexander's documents were sent to defendant Kifer, the Inmate Accounts Supervisor. But at the direction of Myers and fellow correctional lieutenant defendant Speck, Alexander's mail was "subjected to increased scrutiny." J.A. 56. With Kifer's approval, Alexander's legal mailings were directed to defendant correctional officers Greenleaf and Taylor. The documents then disappeared. Greenleaf later told Alexander that he had worked with other prison guards to interfere with the litigation documents. After failing to receive required documents from Alexander, the District Court dismissed the Cumberland action and subsequently denied Alexander's motion to reopen.

Alexander then filed a grievance regarding the unmailed documents. Speck responded with a warning that more grievances or lawsuits "would result in negative consequences." J.A. 60. When Alexander persisted, defendants placed him in the prison's Restricted Housing Unit ("RHU").

In the RHU, Alexander alleges he suffered further retaliatory treatment. Alexander contends that when he joined other RHU inmates in demanding medical attention for a beaten prisoner, officers responded by repeatedly using liberal amounts of pepper spray on the unit without taking precautions to prevent spill-over into Alexander's cell. Alexander was one of several RHU inmates who suffered injuries from the pepper

3

spray, so he filed additional grievances, demanded adequate ventilation, and requested medical treatment.  While interviewing Alexander for the pepper spray grievances, defendant Wiser, a supervisor in the RHU, dismissed the complaints as frivolous and said it would "go better for [Alexander] if he did not persist in pursuing" them.  J.A. 61–62.  Alexander then filed a new grievance regarding mis-delivery of his mail.

In June 2020, Myers issued a misconduct report against Alexander charging him with conspiring to smuggle drugs into prison.  That same day, Wiser, Greenleaf, and Taylor removed Alexander from his cell and conducted a two-hour long search.  Alexander's papers, bedding, and food items were dumped and trampled, and he later discovered his legal papers were gone.  Wiser and Greenleaf told Alexander "this is what complaining gets you," and promised future repercussions if Alexander continued complaining.  J.A. 64.  But Alexander still filed a grievance concerning the cell search, and a few days later all misconduct charges against him were dismissed following a hearing in front of the prison's normally assigned hearing officer.

Myers issued a renewed misconduct report immediately after this first set of charges were dismissed again charging Alexander with drug possession.  Because the normally assigned Hearing Officer had dismissed the first set of charges, Myers and Speck arranged for the new charges to be specially assigned to defendant hearing officer Ellenberger.  Ellenberger found Alexander guilty during the resulting hearing after stating he would not look at evidence.

Alexander filed this lawsuit pro se after exhausting his administrative remedies. The court dismissed Alexander's complaint.  Alexander timely appealed and is now represented by pro bono counsel.

**II.**[2]

The District Court concluded Alexander failed to state a claim for First Amendment retaliation and was barred from recovering compensatory damages under the PLRA because he had not pled that he suffered any physical injury.[3]  Both parties now concur that Alexander makes sufficient factual allegations in his complaint to state a facially plausible claim for relief and to overcome the PLRA's compensatory damages bar.  We agree with the parties.

A.

To proceed on a First Amendment retaliation claim, a prisoner must allege:  (1) that he engaged in constitutional protected conduct, (2) that prison officials subjected him to adverse action, and (3) that the constitutionally protected conduct was a substantial or

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343.  We have jurisdiction under 28 U.S.C. § 1291.  We review the grant of a motion to dismiss de novo, accepting all well-pleaded factual allegations as true and considering them in the light most favorable to the plaintiff.  Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011).  Where, as here, the complaint was filed pro se, we construe it liberally and hold it to "less stringent standards than formal pleadings drafted by lawyers."  Durham v. Kelley, 82 F.4th 217, 223 (3d Cir. 2023) (citation omitted).

[3] Alexander also brought other claims under the First, Eighth, and Fourteenth Amendments, in addition to several Pennsylvania statutes and regulations.  However, because he only challenges the dismissal of his First Amendment retaliation claim on appeal, we do not address his other claims.

motivating factor in the decision to discipline him.  Watson v. Rozum, 834 F.3d 417, 422

& n.6 (3d Cir. 2016).  The District Court correctly determined Alexander's lawsuit and

grievances were constitutionally protected activity under the first prong of this test.  See

id. at 422–23.  We thus direct our attention to the second and third prongs.

The second prong requires identifying conduct sufficient to "deter a prisoner of

ordinary firmness from exercising [their] First Amendment rights."  Allah v. Seiverling,

229 F.3d 220, 225 (3d Cir. 2000).  While this inquiry is fact-specific, it does not set a

high bar — the actions "need not be great in order to be actionable," the actions must just

be "more than de minimis."  Watson, 834 F.3d at 423 (quoting McKee v. Hart, 436 F.3d

165, 170 (3d Cir. 2006)).  And even individual instances which "would be de minimis if

considered in isolation," can, by their "cumulative impact . . . become actionable."

Brennan v. Norton, 350 F.3d 399, 422 n.17 (3d Cir. 2003).

Alexander contends that he was the subject of a campaign of retaliation, with

correctional officers, inter alia, interdicting his mail and thus causing the dismissal of his

lawsuit, arranging a mock grievance hearing with a predetermined outcome to punish

him, exposing him to pepper spray, and conducting a punitive and destructive multi-hour

search of his cell.  Assessing the cumulative impact here, we conclude Alexander has

pleaded more than a de minimis adverse action.

Turning to the third prong, we again agree with the parties that Alexander's

complaint adequately pleads his constitutionally protected conduct was a substantial or

motivating factor in the decision to discipline him.  Alexander can satisfy this prong by

pleading the existence of "unusually suggestive" timing as well as a "pattern of

6

antagonism." Conard v. Pennsylvania State Police, 902 F.3d 178, 184 (3d Cir. 2018) (citation omitted).

Alexander has pleaded both here. Upon his arrival at SCI-Smithfield, officers told Alexander that activities similar to his "extensive grievance and litigation history . . . would not be tolerated." J.A. 52. Yet Alexander still filed a grievance when his mail was mis-delivered. The officers then filed a misconduct complaint against him to justify a disruptive search of his cell. And after searching his cell, the officers again warned Alexander of repercussions for any further grievances. When Alexander nonetheless filed a grievance against the cell search, the officers responded three days later by renewing a previously dismissed misconduct complaint against him. The presence of both suggestive temporal proximity and a pattern of antagonism leaves us with little doubt that Alexander's pleading supports the necessary causation inference. See Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 604 (3d Cir. 2015).

Having met all three prongs, we conclude Alexander's complaint states a claim for First Amendment retaliation and should proceed.

### B.

The PLRA bars recovery "for mental or emotional injury suffered while in custody" by prisoners who have not made "a prior showing of physical injury." 42 U.S.C. § 1997e(e). As applied to First Amendment claims, Section 1997e(e) requires prisoners to show a "less-than-significant-but-more-than-de minimis physical injury" to recover compensatory damages. Mitchell v. Horn, 318 F.3d 533, 536 (3d Cir. 2003).

The District Court found Alexander had not alleged any physical injury. But Alexander did. He was exposed to pepper spray on three occasions in the RHU, and he requested medical treatment. Under the liberal pleading standards afforded to pro se litigants, we conclude Alexander has alleged sufficient physical injury at the motion to dismiss stage to avoid immediate application of Section 1997e(e)'s bar.

## III.

For the foregoing reasons, we will reverse the dismissal of Alexander's First Amendment retaliation claim and the determination that Alexander cannot receive compensatory damages. We will remand for further proceedings consistent with this opinion.